CONSOLIDATED ENGINEERING
CORPORATION
v.
The UNITED STATES.
No. 244-54.

United States Court of Claims.
Jan. 11, 1955.

Richard B. Hoegh, Los Angeles, Cal., for plaintiff. Christie, Parker & Hale and James B. Christie, Pasadena, Cal., were on the brief.

T. Hayward Brown, Washington, D. C., with whom was Asst. Atty. Gen., Warren E. Burger, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LITTLETON, Judge.

This case is before the court on the defendant's motion to dismiss the plaintiff's petition on the ground that the complaint fails to state a claim upon which relief can be granted.

The plaintiff filed its petition against the United States pursuant to the provisions of 28 U.S.C. § 1498,[1] claiming that the defendant had infringed three

1. "Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the Court of Claims for the recovery of his reasonable and entire compensation for such use and manufacture.

"For the purposes of this section, the use or manufacture of an invention described in and covered by a patent of the United States by a contractor, a subcontractor, or any person, firm, or corporation for the Government and with the authorization or consent of the Government, shall be construed as use or manufacture for the United States. * * *"

of the plaintiff's patents [2] in that the Atomic Energy Commission had caused to be made and had used G–107 Line Recorders,[3] which embodied the plaintiff''s inventions, without a license from the plaintiff to make or use devices covered by plaintiff's patents. The plaintiff seeks reasonable compensation [4] for the alleged infringement of its patents.

The defendant moved to dismiss the plaintiff's petition on the ground that the Atomic Energy Act of 1946 [5] prevents a patent from conferring any rights with respect to any invention or discovery used in the production of fissionable material and that "used" also includes the right to manufacture the inventions which are used in the production of fissionable material.

In answer to the defendant's contentions, the plaintiff says that the G–107 Line Recorders were not used in the production of fissionable material and even if they were so used, the right to use as granted by the Act does not include the right to manufacture the invention.

The issue presented for decision in this case is whether the G–107 Line Recorders were used in the production of fissionable material within the provisions of Sections 11(a) (2) and 11(b) of the Atomic Energy Act of 1946 [6] and if so, does "used" also include the right to manufacture the inventions.

The plaintiff tells us that the G–107 Line Recorder is a mass spectrometer and is solely an analytical instrument. It can perform no function other than the analysis of gases. Therefore the instruments cannot be used in the production of fissionable material. Equipment used in the production of fissionable material within the meaning of Section 11(a) (2) of the Act is confined to the actual production facilities which function "to manufacture * * * to separate * * * or to produce" [7] and does not include auxiliary equipment, such as mass spectrometers, which are incapable of producing atomic energy. Plaintiff concludes that the phrase "used in the production of fissionable material" must be limited to equipment capable of actually producing fissionable material and not extended to include the mass spectrometers.

On the other hand, the defendant states that the G–107 Line Recorders are permanently and physically incorporated in the gaseous diffusion cascades in Atomic Energy Commission plants.

2. Letters Patent No. 2,450,462 (October 5, 1948).
   Letters Patent No. 2,587,575 (February 26, 1952).
   Letters Patent No. Re. 23,464 (February 26, 1952).

3. Paragraph 12 of the plaintiff's petition states that in or about the year 1952 the Atomic Energy Commission published specifications for a mass spectrometer which encompassed the inventions in mass spectrometers described and claimed in the above-mentioned patents [note 2] for the construction of 86 or more of the mass spectrometers known as G–107 Line Recorders.

4. $180,000.

5. Chapter 724, § 1 et seq., 60 Stat. 755, 42 U.S.C.A. § 1801 et seq. [now 42 U.S. C.A. § 2011 et seq.].

6. 60 Stat. 768, 42 U.S.C.A. § 1811 (1952).
   "(a) (2) No patent granted after August 1, 1946 shall confer any rights with respect to any invention or discovery to the extent that such invention or discovery is used in the production of fissionable material or in the utilization of fissionable material or atomic energy for a military weapon. Any rights conferred by any patent granted prior to August 1, 1946 for any invention or discovery are revoked to the extent that such invention or discovery is so used, and just compensation shall be made therefor.
   *      *      *      *
   "(b) No patent granted after August 1, 1946 shall confer any rights with respect to any invention or discovery to the extent that such invention or discovery is used in the conduct of research or development activities in the fields specified in section in section 1803 of this title. Any rights conferred by any patent heretofore granted for any invention or discovery are revoked to .the extent that such invention or discovery is so used, and just compensation shall be made therefor."

7. See note 10.

Those not in actual use in the cascades are being used to train maintenance personnel to qualify them for maintenance work on the Line Recorders, used in research and development directed to the improvement of the gaseous diffusion process for the separation of uranium isotopes, to monitor gaseous reactants and reaction products in the auxiliary feed facilities of the gaseous diffusion cascades, and a few of the Line Recorders are maintained as spares for replacements in the above operations. The defendant further states that all of the Line Recorders incorporated in the gaseous diffusion cascades were uniquely designed for use in gaseous diffusion cascades for the separation of uranium isotopes and that the Line Recorders incorporated in the gaseous diffusion cascades form an integral part of the instrumentation system for the control of the cascades and are used to monitor the operation of the cascades thereby furnishing essential information to the operators of the cascades. This information permits correction of malfunctioning of units of the cascades and thus secure the optimum rate of production of the uranium isotope of mass 235 having the required chemical and isotopic purity and that the uranium isotope

of mass 235 could not be produced with the required chemical and isotopic purity at the present production rates in the existing gaseous diffusion cascades without the use of the Line Recorders.[8] The separation of uranium isotopes by diffusion results in a concentration of the isotope Uranium 235 which is a fissionable material as defined in Section 5(a) of the Act.[9] Defendant urges that this constitutes a production of fissionable material within the meaning of the Act.[10]

■ We think that the phrase "used in the production of fissionable material" is not limited to equipment actually capable of producing fissionable material but also includes equipment such as these Line Recorders which are permanently and physically incorporated in the gaseous diffusion cascades. The Line Recorders form an integral part of the instrumentation system used to control the cascades. The uranium isotope of mass 235 could not be produced at the present production rates in the existing gaseous diffusion cascades with the required chemical and isotopic purity if it were not for the use of Line Recorders. Certainly these Line Recorders are used in the production of fissionable material within the meaning of Sec-

8. These facts are established by the affidavit of John R. Mahoney. The affidavit was submitted by defendant in support of its motion to dismiss plaintiff's petition. Mr. Mahoney is an Assistant Superintendent of the Instrument Engineering Department, Carbide and Carbon Chemicals Company, Oak Ridge, Tennessee. It is Mr. Mahoney's duty to keep informed as to the disposition and use of mass spectrometers of the type designated as Line Recorders which have been purchased by or for the Government and consigned to the gaseous diffusion plants operated for the United States Atomic Energy Commission by Carbide and Carbon Chemicals Company at Oak Ridge, Tennessee, and Paducah, Kentucky, and the gaseous diffusion plant to be operated for the United States Atomic Energy Commission by Goodyear Atomic Corporation at Portsmouth, Ohio. The plaintiff has filed no counter-affidavit denying these facts.

9. 42 U.S.C.A. § 1805 (1952).
"(a) (1) * * * As used in this chapter, the term 'fissionable material' means plutonium, uranium enriched in the isotope 235, any other material which the Commission determines to be capable of releasing substantial quantities of energy through nuclear chain reaction of the material, or any material artificially enriched by any of the foregoing; but does not include source materials, as defined in subsection (b) (1) of this section. * * *"

10. 42 U.S.C.A. § 1804(a) (1952).
"(a) As used in this chapter, the term 'produce', when used in relation to fissionable material, means to manufacture, produce, or refine fissionable material, as distinguished from source materials as defined in section 1805(b) (1) of this title, or to separate fissionable material from other substances in which such material may be contained or to produce new fissionable material. * * *"

tions 11(a) (2) and 11(b) of the Atomic Energy Act of 1946.

The plaintiff also contends that even assuming that the Line Recorders are "used in the production of fissionable material" or "used in the conduct of research", and such use ·alone · is non-infringing, the plaintiff still has a good cause of action for the infringing manufacture of the Line Recorders under Section 1498 of the Judicial Code.[11]

Section 1498 of Title 28 of the United States Code allows the owner of a patented invention which is manufactured by or for the United States without a license or lawful right, to sue the United States in the Court of Claims for the recovery of his reasonable and entire compensation for such manufacture by the United States.

█ Section 1498 is not applicable to the case at bar. The Atomic Energy Act prohibits recovery. The Atomic Energy Act ·prevents any patent rights from accruing to a patentee if his invention is used in the production ·of atomic energy. See Fletcher v. United States Atomic Energy Commission, 89 U.S. App.D.C. 218, 192 F.2d 29, certiorari denied 342 U.S. 914, 72 S.Ct. 361, 96 L.Ed. 684. Private patents are eliminated from the atomic energy field.[12]

Therefore the Act protects the Government from liability when 'it uses a patented invention·in the production of atomic energy. Although the Act does not specifically exempt the manufacture for use, we think that the manufacture for use of a patented invention, which is used in the production· of atomic energy, is also protected. It is inconceivable that Congress would exempt the Government from liability for the use of a patented invention and at the same time permit the Government to be liable for the manufacture of the exempted item. The bare right to use the patented invention without the corresponding right to manufacture or have manufactured the invention is valueless.

We hold therefore that the plaintiff's patents conferred no rights with respect to the inventions which were used or manufactured to be used in the specified instances in this case. The plaintiff obtained no rights under the patents insofar as and to the extent that the patented items were used by the defendant. It follows then that there can be no recovery.

The defendant in this case filed an affidavit in support of its motion to dismiss. Rule 16(b) permits us to consider this motion as a motion for summary judgment as provided in Rule 51.[13] On the basis of the petition and documents before the court, we hold that there is no genuine issue as to any material fact alleged and that upon the facts before the court summary judgment must be granted as a matter of law. The plaintiff's petition is dismissed.

It is so ordered.

JONES, C. J., and LARAMORE, MADDEN and WHITAKER, JJ., concur.

11. See note 1.

12. See Senate Report 'No. 1211, April 19, 1946, 79th Cong. 2d Session [1946 U.S. Code Cong.Serv. 1335].

In Sections 4 and 6 the bill provides for a Government monopoly of the production of fissionable material and' atomic · weapons. ' In considering the patent implications of these provisions, *the committee concluded that .private patents can play no role in fields of activity reserved exclusively to the Government.* * * * [Emphasis supplied.]

13. Rules of the United States Court of Claims, 28 U.S.C. (1952). Rule 16(b) provides in part that "If, on a motion asserting the defense numbered (2) to dismiss for failure of the pleading to state · a claim upon which relief can be granted, matters outside the pleading are ·presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule ·51 * * *."